**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Viridiana Avendano Flores,<br><br>Plaintiff,<br><br>v.<br><br>Elite Staffing Services LLC, et al.,<br><br>Defendants. | No. CV-24-02241-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for conditional certification ("the preliminary certification motion")[1] of a collective action under the Fair Labor Standards Act ("FLSA") filed by Viridiana Avendano Flores ("Plaintiff"). (Doc. 27.) For the reasons that follow, the motion is granted.

## BACKGROUND

On August 28, 2024, Plaintiff filed this FLSA action against Defendants Elite Staffing Services, LLC ("Elite Staffing"), CP Boulders LLC ("CP Boulders"), Columbia Sussex Corporation ("Columbia Sussex"), Dulce Matias ("Matias") and John Doe Matias, a married couple, Joseph Rodriguez ("Rodriguez") and Jane Doe Rodriguez, a married couple, and various unknown "Doe" corporations. (Doc. 1.)

The facts alleged are as follows. Defendants CP Boulders, Columbia Sussex, and the unknown "Doe" corporations (together, "the Boulders Defendants") own, operate, or

---

[1] Courts in the Ninth Circuit use the terms "conditional certification" and "preliminary certification" interchangeably.

manage The Boulders Resort & Spa Scottsdale ("the Resort"). (*Id.* ¶ 9.) Defendants Elite Staffing, Matias, and Rodriguez (together, "the Elite Staffing Defendants") own and operate "an employment placement agency" that provides the Boulders Defendants with workers ("the Workers") who work in the Resort's restaurants, kitchens, housekeeping, and other departments, including Plaintiff, who performed "kitchen-related duties." (*Id.* ¶¶ 8, 10, 68.) "[I]n theory," and in an effort to "avoid employment-related liability," the Boulders Defendants pay the Elite Staffing Defendants to manage the Workers, but "in reality," the Boulders Defendants control the Workers' "day-to-day functions" and "the work being performed," handle "the disciplining and firing" of the Workers, and "set and communicate" work schedules. (*Id.* ¶¶ 11-12, 47, 72-74, 108.) Thus, the complaint asserts that "the Elite Staffing Defendants and [t]he Boulders Defendants comprise a 'vertical joint employment' relationship under the FLSA" and operate "as a 'single enterprise' within the meaning of Section 203(r)(1) of the FLSA." (*Id.* ¶¶ 36-42.) Plaintiff and the other Workers "worked for an hourly wage," "were generally scheduled to, and did, work in excess of 40 hours per week," and were not compensated "one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek"—rather, they were paid "their regular, straight-time rate" for overtime hours. (*Id.* ¶¶ 102-05.) For example, Plaintiff, who was hired in March 2023, was paid a regular rate of approximately $19 per hour and was scheduled to work and did work between 60 and 95 hours per week, a minimum of six days per week, but regardless of how many hours of overtime she worked, Plaintiff was always paid her regular hourly rate of approximately $19 per hour for every hour she worked. (*Id.* ¶¶ 67-71, 75-85.)

As such, Plaintiff brings this action on behalf of herself and a proposed collective:

> All current or former Hourly Employees (or individuals with other similar job duties or titles), who were provided by Elite Staffing Services, LLC, or any of the Elite Staffing Defendants to work for The Boulders Resort & Spa Scottsdale and/or who did not receive an overtime premium of one and one-half times their regular rates of pay for time spent working in excess of 40 hours in at least one workweek at any time during the past three years before the filing of the Complaint up to the present.

(*Id.* ¶ 106.)

On October 25, 2024, the Boulders Defendants[2] filed an answer and a cross claim against Elite Services and Rodriguez. (Doc. 14.)

On November 5, 2024, the Boulders Defendants filed an amended answer and cross claim. (Doc. 18.)

On December 16, 2024, Plaintiff filed the preliminary certification motion. (Doc. 27.)

On January 3, 2025, following a short stipulated deadline extension, the Boulders Defendants responded to the preliminary certification motion. (Doc. 32.)[3]

On January 6, 2025, Plaintiff filed a reply. (Doc. 33.) Neither side requested oral argument.

**DISCUSSION**

I. <u>Legal Standard</u>

The FLSA provides "similarly situated" employees with the "right" to bring a collective action against their employer:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . . The right . . . to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . . .

29 U.S.C. § 216(b).

The seminal Ninth Circuit case regarding FLSA collective actions is *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). In *Campbell*, the Ninth Circuit

---

[2] The unknown "Doe" corporations have not been served and have not participated. Pursuant to the Court's September 3, 2024 order (Doc. 5 at 6-7), those defendants are dismissed without prejudice for failure to serve. From this point forward, "the Boulders Defendants" refers only to CP Boulders and Columbia Sussex.

[3] The Court permitted service via alternative means as to the Elite Services Defendants. (Doc. 21.) Those Defendants were served with the complaint and cross claim on November 22, 2024 (Docs. 22-25) and have not answered, responded to the preliminary certification motion, or otherwise participated in this action. However, neither Plaintiff nor the Boulder Defendants have applied for the entry of a default as to the Elite Services Defendants.

explained that § 216(b) provides that "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Id.* at 1100. The court further explained that this right "has two permutations": (1) "[t]he right . . . to bring an action by or on behalf of any employee"; and (2) "the right of any employee to become a party plaintiff to any such action"—"that is, the right to bring the collective litigation and the right to join it." *Id.*

Turning to the procedures and standards governing FLSA collective actions, the *Campbell* court noted that a judicially-crafted "two-step 'certification' process" had become "near-universal" and therefore chose to "adhere" to the terms "preliminary certification" and "decertification" in the FLSA context because they are "widespread," with the caveat that adherence to this terminology does not "imply that there should be any particular procedural parallels between collective and class actions." *Id.* at 1100-02. The court further clarified that, under the two-step certification process, "plaintiffs will, at some point around the pleading stage, move for 'preliminary certification' of the collective action, contending that they have at least facially satisfied the 'similarly situated' requirement," and then "[l]ater, after the necessary discovery is complete, defendants will move for 'decertification' of the collective action on the theory that the plaintiffs' status as 'similarly situated' was not borne out by the fully developed record." *Id.* at 1100. Although the court acknowledged that both steps involve evaluating whether the plaintiffs are "similarly situated," it emphasized that the district court applies different standards at each step:

> Preliminary certification, as noted, refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the "similarly situated" requirement of section 216(b). At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence. The level of consideration is "lenient"—sometimes articulated as requiring "substantial allegations," sometimes as turning on a "reasonable basis," but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings.
>
> [ . . . ]
>
> Assuming the collective action has survived its earlier scrutiny, the second

> stage will come at or after the close of relevant discovery. The employer can move for "decertification" of the collective action for failure to satisfy the "similarly situated" requirement in light of the evidence produced to that point. The district court will then take a more exacting look at the plaintiffs' allegations and the record. Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the "similarly situated" question, and may be combined with cross-motions for summary judgment.

*Id.* at 1109-10 (cleaned up). The court noted that "the two-step process . . . has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Id.* at 1110.[4]

*Campbell* articulated the following definition of "similarly situated"[5] that courts within the Ninth Circuit must employ:

> [P]arty plaintiffs must be alike with regard to some *material* aspect of their litigation. That is, the FLSA requires similarity of the kind that allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. That goal is only achieved—and, therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims. If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.

*Id.* at 1114 (cleaned up). Put another way, "[p]arty plaintiffs are similarly situated, and

---

[4] In *Campbell*, a decertification motion was at issue, so the "more exacting" summary-judgment-like standard applied, as opposed to the "lenient" plausibility-like standard that applies to a preliminary certification motion. Nevertheless, *Campbell* sets forth the standard for both steps in the two-step process and is binding as to both. *See, e.g.*, *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense."); *Vanorden v. ECP Optometry Servs. LLC*, 2024 WL 5200483, *6 (D. Ariz. 2024) ("To the extent Defendants argue that *Campbell*'s articulation of the applicable preliminary-certification standard is dicta, not only is that characterization of *Campbell* incorrect for the reasons discussed above, but the disputed passages of *Campbell* would remain binding here even if they could be characterized as dicta.").

[5] Although the Ninth Circuit explicitly construed the phrase "similarly situated," as used in § 216(b), in its September 2018 decision in *Campbell*, it is the Court's observation that attorneys routinely cite *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010), for the proposition that "the Ninth Circuit has not construed the term." (Doc. 27 at 12.) *Colson*'s statement on that point was true at the time but is now inaccurate. Indeed, Plaintiff's overview of the legal standard for preliminary certification (Doc. 27 at 11-13) never cites *Campbell* and relies almost entirely on district court decisions that predate *Campbell*. Defendant's response brief likewise does not cite *Campbell*. If the briefing had included an updated overview of Ninth Circuit law, the arguments would have likely been better focused.

may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. "[D]ifference" is not "disqualifying"—rather, "the requisite kind of similarity" is the "basis for allowing partially distinct cases to proceed together." *Id.*

Under this definition, the members of an FLSA collective do not need to have "overall sameness." *Id.* at 1116. For example, in *Campbell*, it was enough for the plaintiffs to demonstrate that they were subject to the same "overall policy" regardless of whether they "worked on different tasks, in different divisions, and under different supervisors" because "[a] systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees." *Id.* In that case, "[t]he district court emphasized also that the [plaintiffs] worked different hours and claimed overtime of different amounts, including some amounts that might have been de minimis," but the Ninth Circuit stated that "those distinctions go to the individualized calculation of damages or the individualized application of defenses" and "do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance." *Id.* Likewise, the need for "individualized damages calculations" does not preclude certification of the collective. *Id.* at 1116-17.

Finally, *Campbell* clarified that "the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." *Id.* at 1115. "As is true in all FLSA cases," the "background principle" is that "because the FLSA is a remedial statute, it must be interpreted broadly." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 950 (9th Cir. 2019) (citation omitted). "The 'similarly situated' standard at [the conditional certification] phase is fairly lenient and typically results in certification." *Roberts v. Sidwell Air Freight Inc.*, 2022 WL 16949565, *8 (W.D. Wash. 2022) (quotation omitted).

…

…

- 6 -

II. The Parties' Arguments

A. **The Motion**

The motion redefines the proposed collective as follows:

> All individuals who worked at any time for the Boulders Defendants at The Boulders Resort and Spa Scottsdale through the Elite Staffing Defendants' employment placement agency, who worked in the position(s) of Housekeeping, Day Porter, Servers, Kitchen Staff, Landscaping, and/or a job of similar title and characteristics, and who did not receive an overtime premium for time worked in excess of 40 hours in a given workweek starting August 28, 2021, through the present.

(Doc. 27 at 11.)

Plaintiff appends to her motion declarations and pay stubs—her own (Doc. 27-1) and those of two members of the proposed collective, Raul Robles (Doc. 27-2) and Angel Acuna (Doc. 27-3)—and argues that "for the purpose of conditional certification, Plaintiffs have established that they were together victims of Defendants' decision, policy, or plan: to jointly contract to employ Plaintiffs and the Collective Members to work non-exempt, unskilled manual labor positions the Boulders Defendants needed to fill at [the Resort] and to avoid paying them overtime for hours worked in excess of 40 in a given workweek." (Doc. 27 at 4-5.) Plaintiff argues that (1) Defendants jointly employ Plaintiff and the members of the proposed collective (*id.* at 5-9) and (2) Defendants required Plaintiff and the members of the proposed collective to work "significant overtime every week" but did not pay them the overtime premium of one and one-half times their regular rates of pay for the overtime hours they worked (*id.* at 9-10).

Plaintiff also appends a proposed form of notice (Doc. 27-4) and argues that it is "accurate and informative." (Doc. 27 at 14.) Plaintiff requests that the Court authorize notice to be sent in English and Spanish via mail, email, and text message twice during a 90-day opt-in period. (*Id.* at 15-16.)

Finally, "Plaintiff requests that, in addition to granting conditional certification and approving Plaintiff's Notice, the Court order Defendants to produce within five days of its order, a list in electronic and importable format, of all individuals who meet the description in [the proposed collective], including: (1) name, (2) mailing address, (3) email address,

(4) telephone number, (5) social security number or ITIN, (6) dates of work at [the Resort], and (7) any identification number(s) provided to each by any of the Defendants." (*Id.* at 16.)

### B.     **The Response**

First, the Boulders Defendants argue that preliminary certification "requires evidentiary support" and "must be based on admissible evidence" (Doc. 32 at 4) and challenge the admissibility of portions of the declarations appended to Plaintiff's motion (*id.* at 1-2, 4-6).

Second, the Boulders Defendants "deny that they were a joint employer of Plaintiff or the putative class members, and . . . reserve the right to challenge this issue through discovery," affirmatively stating that "the issue of whether the Boulder Defendants were joint employers or Plaintiff (let alone the alleged putative class members) is an outstanding factual dispute." (*Id.* at 6.)

Third, "the Boulder[s] Defendants object to the Proposed Notice and Opt-In Forms," arguing that the opt-in period should be "45 days or 60 days," that the forms should include a statement that Defendants deny liability, that the forms should warn potential opt-in plaintiffs that they may have to participate in discovery, depositions, and trial if they opt in and "may be liable for defendants' attorneys' fees and costs if they opt in and do not prevail," that the forms should include defense counsel's contact information, and that the statement "You have received this notice because The Boulders Resort and Spa Scottsdale and Elite Staffing Services identified you as potentially eligible for relief in this lawsuit as one of the Employees" should be removed because it implies that Defendants have already conceded liability. (*Id.* at 7-8.)

Finally, the Boulders Defendants object to producing a list of individuals who meet the description in the proposed collective, arguing that "it would be virtually impossible" for them to do so because the Boulders Defendants did not make payments and "do not know what Elite Staffing paid to each worker, or if Elite Staffing failed to make overtime payments to those who qualified for overtime payments." (*Id.* at 8-9.)

C. **The Reply**

In reply, Plaintiff states that "Defendants hang their hat on a single case, *Colson v. Avnet, Inc.*, in support of their assertion that evidence must be admissible for it to be considered in a motion for conditional certification" and argues that *Colson* is distinguishable. (Doc. 33 at 2-4.) Plaintiff argues that the declarations support "the ultimate thesis of this case: The Boulders Defendants implemented the decision, policy, and plan to use the Elite Staffing Defendants' staffing agency with the sole objective of employing undocumented, non-English-speaking, or otherwise vulnerable workers and paying them as little as possible while attempting to contractually define the employer as the Elite Staffing Defendants as a pretext for evading wage-related liability." (*Id.* at 4.) Plaintiff further argues that "[e]ven if [the declarations] were not enough to meet conditional certification's light threshold, the Boulders Defendants' own Answer, Crossclaims, and Contract Exhibit provide sufficient evidence to show that the Boulders Defendants treated Plaintiff and the Collective Members substantially similarly, if not identically." (*Id.* at 5.) Plaintiff argues that the Boulders Defendants' hearsay objections to portions of the declarations are "merits-related questions" that "should not stand in the way of obtaining conditional certification." (*Id.* at 6.)

Plaintiff agrees with Defendants that the joint employment issue is "a merits-related inquiry" that "requires discovery" and is "therefore improper [to resolve] at the conditional certification stage." (*Id.* at 6-7.)

Regarding the form of notice, Plaintiff argues that the Boulders Defendants' proposed changes are inappropriate, except on one point—Plaintiff agrees to insert the statement: "Defendants have denied any and all liability in this lawsuit." (*Id.* at 7-8.)[6]

As for whether the Boulders Defendants should be required to produce a list of individuals who meet the description in the proposed collective, along with contact and

---

[6] Plaintiff also clarifies that the proposed form of notice contains a typographical error—the date range should be August 28, 2021 to the present, consistent with the range specified in the complaint and the motion, not August 28, 2024 to the present. (Doc. 33 at 7.)

- 9 -

identifying information and their dates of work at the resort, Plaintiff argues that the Boulders Defendants' claim of impossibility is "false on its face" because "the Boulders Defendants admit[] they kept and maintained Plaintiffs' and the Collective Members' time records and submitted them to the Elite Staffing Defendants along with payment based on such hours." (*Id.* at 9.) Plaintiff further argues that the "failure by an employer to keep and maintain adequate and accurate records for its employees violates the FLSA and 29 C.F.R. § 516's strict recordkeeping requirements" and request that if the Boulders Defendants are "unable to produce a putative [collective members] list," the Court should "order equitable tolling of the pertinent statutes of limitations for each putative opt-in's claim." (*Id.* at 9-10.)

III. Analysis

 A. **Preliminary Certification**

Whether preliminary certification is warranted is not a close call. "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. The Boulders Defendants affirmatively state that "the issue of whether the Boulder[s] Defendants were joint employers o[f] Plaintiff (let alone the alleged putative class members) is an outstanding factual dispute." (Doc. 32 at 6.) That outstanding dispute (which is actually a disputed issue of law that will likely hinge on disputed issues of fact) is material to the disposition of the collective members' FLSA claims. Because the parties *do not dispute* the existence of this shared, disputed material issue of law, the analysis could end there. *See, e.g.*, *Castillo v. K.B. Wallworx Inc.*, 2023 WL 8002843, *5 (D. Ariz. 2023) (preliminary certification analysis "not difficult" where joint employment issue is a shared issue of law).

The Court also notes that the Boulders Defendants' primary argument, that preliminary certification "requires evidentiary support" and "must be based on admissible evidence" (Doc. 32 at 4), is premised on *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010), but the preliminary certification analysis in *Colson* is no longer good law in

light of *Campbell*, which clarified that "[a]t this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. Thus, while "declarations or limited other evidence" are permissible, they are by no means required. *See, e.g.*, *Vanorden v. ECP Optometry Servs. LLC*, 2024 WL 5200483, *8 (D. Ariz. 2024) ("Defendants argue that Plaintiffs have failed to submit 'objective evidence' to prove their similarity, asserting that Plaintiffs' declarations are 'self-serving' and 'rely on hearsay.' But objective evidence is not required here. A preliminary certification motion—much like a Rule 12(b)(6) motion to dismiss—is typically filed at some point around the pleading stage and is focused on a review of the pleadings using a standard loosely akin to a plausibility standard, commensurate with the early stage of the proceedings. Although the analysis may sometimes be supplemented by declarations or limited other evidence, such evidence is not necessary.") (cleaned up); *Robinson v. Maricopa Cnty. Special Health Care Dist.*, 696 F. Supp. 3d 769, 782 (D. Ariz. 2023) ("Defendant also cites [*Colson*], another pre-*Campbell* decision, for the proposition that Plaintiff must provide the court with detailed allegations supported by declarations which successfully engage a defendant's affidavits to the contrary. But *Campbell* once again forecloses that proposition.) (cleaned up).[7]

Here, the allegations in the complaint, without any help from the supporting declarations, are sufficient to plausibly allege that the members of the collective share a similar issue of law or fact material to the disposition of their FLSA claims and are therefore similarly situated.[8] The Boulders Defendants do not address the allegations in

---

[7] The Boulder Defendants cite Rule 11(b) of the Federal Rules of Civil Procedure to suggest that Plaintiffs did not have enough evidence to bring this lawsuit. (Doc. 32 at 8.) This is surprising, as Plaintiff and two other members of the proposed collective have submitted not only declarations avowing that Defendants failed to pay them overtime but also paystubs that appear to multiply hours worked far in excess of 40 hours by a flat rate of pay.

[8] Even if that were not the case, the unchallenged portions of the declarations—the portions that relate to the firsthand experiences of each declarant—support that each declarant was subjected to the same policy of paying a flat rate for all hours worked, rather than paying overtime. And even if that were not the case, there is no reason to conclude that any evidence offered at the preliminary certification stage should be excluded as

- 11 -

the complaint at all, even though the preliminary certification inquiry is "focused on a review of the pleadings." *Campbell*, 903 F.3d at 1109.

B. **Form Of Notice**

1. Notice Method

Plaintiff requests that the Court authorize notice to be sent in English and Spanish via mail, email, and text message twice during the opt-in period. (Doc. 27 at 15-16.) Defendants do not oppose this notice method, which is therefore approved.

2. Opt-In Period

Plaintiffs request a 90-day opt-in period. (*Id.* at 15.) Defendants respond that "[a]

---

inadmissible, considering that the preliminary certification inquiry is largely focused on the plausibility of the unproven allegations in the complaint and any supporting evidence merely supplements these allegations. *See, e.g.*, *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2007 WL 293865, *3 (E.D. Ky. 2007) ("Because some courts will conditionally certify collective actions under the FLSA based solely on the allegations in the complaint, courts which do require some factual support for conditional certification should take a relaxed approach to evidentiary standards they impose on the factual support provided at this stage.") (cleaned up); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) ("Requiring admissible evidence at the summary judgment stage is logical: there is a possibility that trial will be avoided by the result, so courts should decide the motions based on evidence that would be admissible at trial, if one were held. There is, however, no corresponding possibility of final disposition at the conditional certification stage: whether a motion for conditional certification is granted or denied, the case proceeds with discovery."); *Nguyen v. Versacom, LLC*, 2015 WL 1400564, *3 (N.D. Tex. 2015) ("Because motions for conditional certification are typically made when discovery is in its early stages, and are not dispositive motions, many courts—including this one—have held that affidavits or declarations offered in support of motions for conditional certification need not be based on evidence that would be admissible at trial."); *cf. Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-05 (9th Cir. 2018) ("Applying the formal strictures of trial to such an early stage of litigation makes little common sense. Because a [Rule 23] class certification decision is far from a conclusive judgment on the merits of the case, it is of necessity not accompanied by the traditional rules and procedure applicable to civil trials. Notably, the evidence needed to prove a class's case often lies in a defendant's possession and may be obtained only through discovery. Limiting class-certification-stage proof to admissible evidence risks terminating actions before a putative class may gather crucial admissible evidence. And transforming a preliminary stage into an evidentiary shooting match inhibits an early determination of the best manner to conduct the action. It follows that we have found an abuse of discretion where a district court limited its analysis of whether class plaintiffs satisfied a Rule 23 requirement to a determination of whether Plaintiffs' evidence on that point was admissible. Although we have not squarely addressed the nature of the evidentiary proof a plaintiff must submit in support of class certification, we now hold that such proof need not be admissible evidence. Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification. Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23.").

more appropriate period should be 45 days or 60 days" but offer no argument in support of this contention. (Doc. 32 at 7.) Plaintiff replies that "90 days is appropriate," but also offers no argument in support of this contention. (Doc. 33 at 7.) As no meaningful argument has been advanced on this issue, the opt-in period will be the 90-day period originally requested. *Williams v. U.S. Bank Nat. Ass'n*, 290 F.R.D. 600, 614 (E.D. Cal. 2013) ("Defendant also objects to the 90–day opt-in period, proposing instead a 60–day period, 'which courts in this Circuit have found to be reasonable,' citing two cases, one from the District of Nevada and one from the Northern District of California. The objection, in other words, offers no independent reason the period should be reduced from 90 to 60 days, considering that some courts in this Circuit have approved 60 days, and others have approved 90 days. The objection is overruled.")

### 3. Defendants' Denial Of Liability

Plaintiff agrees to insert the statement: "Defendants have denied any and all liability in this lawsuit." (Doc. 33 at 7-8.) The parties having agreed on this point, no ruling from the Court is needed.

### 4. Warning Of Potential Liability And Discovery Or Trial Obligations

The Boulders Defendants assert that the form of notice should include a warning to potential opt-in plaintiffs informing them that they may have to participate in discovery, depositions, and trial if they opt in and "may be liable for defendants' attorneys' fees and costs if they opt in and do not prevail." (Doc. 32 at 7.) These proposed revisions are unavailing. First, "language informing potential plaintiffs that if they join the collective action, they may be required to answer questions in writing or in deposition, or to give testimony at trial . . . is unnecessary and inappropriate. As Plaintiffs note, individualized discovery is rarely appropriate in FLSA collective actions. Including a warning about possible discovery when that discovery is unlikely will serve no purpose other than deterring potential plaintiffs from joining the suit based on unfounded concerns about the hassle of discovery." *Prentice v. Fund for Pub. Int. Rsch., Inc.*, 2007 WL 2729187, *5 (N.D. Cal. 2007) (cleaned up); *see also Russell v. Swick Mining Servs. USA Inc.*, 2017 WL

1365081, *5 (D. Ariz. 2017) ("Plaintiffs strongly oppose such language, and the Court agrees that it may have a chilling effect on recipients who may be unfamiliar with litigation. Any opt-in who remains reticent to actively engage in discovery will have abundant opportunity to withdraw from the action. Accordingly, the Court will not require a description of potential discovery obligations in Plaintiffs' Notice.").

Second, the fee-shifting provision in the FLSA does not contemplate that a prevailing defendant may recover attorneys' fees from the losing plaintiff. 29 U.S.C. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Congress excluded FLSA plaintiffs from fee liability and "state[d] so specifically," authorizing fee liability only for defendants. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 778 n.7 (1989); *Peak v. Forever Living Prods. Int'l, Inc.*, 2011 WL 13174334, *8 (D. Ariz. 2011) ("FLSA also [has a] mandatory one-way fee-shifting provision[], requiring that a defendant pay a reasonable attorney's fee to a prevailing plaintiff, but not the other way around."). Because the FLSA "does not specifically provide attorney's fees to prevailing defendants," a plaintiff can be liable for a defendant's fees in an FLSA action only "as a fine for the wilful disobedience of a court order, or when a losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985) (cleaned up). As such, "it is uncommon for prevailing defendants to be awarded attorney fees." *Coughlin v. Shimizu Am. Corp.*, 991 F. Supp. 1226, 1231 (D. Or. 1998). A warning that opt-in plaintiffs could be liable for Defendants' attorneys' fees "would undermine the FLSA's goal of encouraging full enforcement of statutory rights, especially where potential opt-in plaintiffs are low-wage workers" and "the potential chilling effect of defendants' proposed warning outweighs the realistic likelihood that any future opt-ins would be required to pay a portion of defendants' litigation costs." *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, *14 (C.D. Cal. 2012).

…

5. <u>Inclusion Of Defense Counsel's Contact Information</u>

Defendants argue that the forms should include "the contact information of the Boulder[s] Defendants' attorneys" because omitting that information "implies that those who receive the forms are already being represented by Plaintiff's attorneys before they opt in, and that they cannot contact the Boulders Defendants' attorneys." (Doc. 32 at 8.) Plaintiff replies that including defense counsel's contact information in the notice "would serve only to confuse the potential opt-in plaintiffs who for the most part are unsophisticated, unskilled workers" and further argues that "[t]he proposed Notice already contains sufficient information from which the potential claimants may easily deduce that they are not represented by anyone because they must affirmatively opt-in and agree to be represented by Plaintiffs' counsel before their claims can proceed." (Doc. 33 at 8.)

While an omission can, at times, convey volumes, "not every silence is pregnant." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1185 (9th Cir. 2019). Defendants do not explain why a potential opt-in plaintiff might wish to contact defense counsel, and it seems unlikely that many potential opt-in plaintiffs would choose to do so—but at any rate, the omission of defense counsel's contact information does not convey the tacit message that potential opt-in plaintiffs are prohibited from ascertaining defense counsel's contact information and contacting defense counsel. Rather, the omission promotes clarity—if potential opt-in plaintiffs are interested in obtaining more information before deciding whether to opt in and whether to agree to be represented by Plaintiff's counsel, it makes sense that they might wish to contact Plaintiff's counsel before making that decision. The inclusion of defense counsel's contact information could confuse opt-in plaintiffs. *Zeman v. Twitter, Inc.*, 747 F. Supp. 3d 1275, 1289 (N.D. Cal. 2024) ("[T]he Court sees no reason to list defense counsel on the notice. Defense counsel do not play a role in managing the distribution of notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion.").

6. <u>"Potentially Eligible For Relief"</u>

The Boulders Defendants assert that the statement "You have received this notice

because The Boulders Resort and Spa Scottsdale and Elite Staffing Services identified you as potentially eligible for relief in this lawsuit as one of the Employees" should be removed because it implies they have already conceded liability. (Doc. 32 at 8.) Plaintiff asserts that "[t]his is patently false" because "[t]he statement itself uses the phrase 'potentially entitled to relief,' which objectively states that such entitlement is anything but certain." (Doc. 33 at 8.)

Although Plaintiff has agreed to insert the statement "Defendants have denied any and all liability in this lawsuit" (Doc. 33 at 7-8), the challenged statement could still be reworked to promote clarity and avoid any possible inference that the Boulders Defendants have conceded liability. The statement "You have received this notice because you are potentially eligible for relief in this lawsuit as one of the Employees of The Boulders Resort and Spa Scottsdale and Elite Staffing Services" appears to convey the same basic sentiment as the originally proposed statement and eliminates the portion Defendants find objectionable. The Court therefore orders this change.

C. **Collective Members' Identifying And Contact Information**

Plaintiffs request "[p]rompt disclosure of the names and contact information for the putative class members" in order to "provide notice to those individuals." (Doc. 27 at 16.)

Defendants call this "a back-door attempt to go on a fishing expedition through the Boulders Defendants' personnel records," invoke Rule 11(b) in support of their seeming assertion that Plaintiffs were required to already have the contact information for all of the opt-in plaintiffs before filing the lawsuit, imply that the request for opt-in contact information is not "reasonable and proportional under the circumstances," and assert that at any rate, "it would be virtually impossible" for the Boulders Defendants to provide contact information because they don't know "if Elite Staffing failed to make overtime payments to those who qualified for overtime payments" and therefore cannot identify which of Workers "meet the description in Section IV." (Doc. 32 at 8-9.)

The Boulders Defendants' arguments are not well taken. It is extremely common—practically universal, in the undersigned judge's experience—for the plaintiffs in an FLSA

collective action to request prompt disclosure of the names and contact member for the collective members. See, e.g., *Bados Madrid v. Peak Constr., Inc.*, 2009 WL 2983193, *2 (D. Ariz. 2009) ("[D]istrict courts have routinely ordered the production of names and addresses of potential collective action members to plaintiffs' counsel.").

As for the argument that it would be "virtually impossible" to comply, noticeably absent is any argument that the Boulders Defendants do not possess contact information for the Workers. Rather, the argument appears to be that the Boulders Defendants do not know which of the Workers has a meritorious claim and cannot identify this meritorious subset of the Workers. This argument is seemingly premised on the inclusion in the collective definition of the phrase "who did not receive an overtime premium for time worked in excess of 40 hours in a given workweek," which the Boulders Defendants appear to interpret as expecting them to determine the merits of the case before producing contact information. There is no such expectation. The Boulders Defendants must produce the list of all individuals who worked for the Boulders Defendants at the Resort through the Elite Staffing Defendants' employment placement agency in the position(s) of Housekeeping, Day Porter, Servers, Kitchen Staff, Landscaping, and/or a job of similar title and characteristics, starting August 28, 2021, through the present—they need not concern themselves with whether each such individual has a winning case.

The Boulders Defendants must produce this information within 14 days of the date of this order.

…
…
…
…
…
…
…
…

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's preliminary certification motion (Doc. 27) is **granted**. The collective, as defined in this order, is conditionally certified, and notice may be provided as set forth in this order.

2. Within 14 days of the date of this order, the Boulders Defendants must produce the names and requested information for all individuals who worked for the Boulders Defendants at the Resort through the Elite Staffing Defendants' employment placement agency in the position(s) of Housekeeping, Day Porter, Servers, Kitchen Staff, Landscaping, and/or a job of similar title and characteristics, starting August 28, 2021, through the present.

3. Defendants John Doe Corporations I-XX are dismissed without prejudice for failure to serve.

Dated this 3rd day of April, 2025.

Dominic W. Lanza
United States District Judge